UNITED STATES OF AMERICA,

        Plaintiff,

    v.                              Case No. 17-cr-191-pp

STEPHEN LEWIS,
and DEMETRA HINKLE,

        Defendants.

## ORDER VACATING THAT PORTION OF JUDGE JOSEPH'S ORDER DENYING DEFENDANTS' REQUEST FOR A <u>FRANKS</u> HEARING (DKT. NO. 62), REMANDING CASE TO JUDGE JOSEPH TO CONDUCT <u>FRANKS</u> HEARING, DEFERRING RULING ON DEFENDANTS' OBJECTIONS TO JUDGE JOSEPH'S RECOMMENDATION THAT THE COURT DENY THEIR MOTION TO SUPPRESS (DKT. NO. 62 AT 18) AND GRANTING DEFENDANT HINKLE'S MOTION TO ORDER APPOINTMENT OF COUNSEL (DKT. NO. 79)

The grand jury returned a seven-count superseding indictment charging defendants Steven Lewis, Theresa Lewis and Demetra Hinkle with conspiring to distribute cocaine, firearm possession, possessing a firearm in furtherance of a drug offense, and maintaining a drug trafficking residence. Dkt. No. 37. Two of the defendants, Stephen Lewis and Demetra Hinkle, filed a motion to suppress evidence, with included a request for a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).[1] Magistrate Judge Nancy Joseph denied the motion for a

---

[1] For the remainder of this decision, when the court refers to "the defendants" it means the defendants who brought the motion to suppress—Stephen Lewis and Demetra Hinkle.

Franks hearing and issued a report recommending that this court deny the motion to suppress. Dkt. No. 62.

The court vacates the portion of Judge Joseph's order denying the defendants' motion for a Franks hearing, dkt. no. 62, and defers ruling on their objections to the recommendation that the court deny the motion to suppress, dkt. no. 62 at 18. The court also grants defendant Hinkle's motion to order appointment of counsel. Dkt. No. 79.

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A.    Procedural History

A November 2017 indictment charged all three defendants with conspiring to distribute over five kilograms of cocaine as well as 280 grams or more of crack. Dkt. No. 9. It charged Stephen Lewis with possessing a firearm in furtherance of a drug trafficking offense (Count Two) and being a felon in possession of firearms (Count Three). Id. Demetra Hinkle was charged with making her residence available for storing, distributing, and using a controlled substance. (Count Four). Id. Finally, the indictment charged Theresa Lewis with traveling to Texas to facilitate a drug transaction (Count Five). Id.

On April 10, 2018, the grand jury returned a superseding indictment adding two additional charges against defendant Hinkle—Count Six, possessing a firearm in furtherance of a drug trafficking offense, and Count Seven, being a felon in possession of a firearm. Dkt. No. 37. The defendants subsequently filed seven pretrial motions. Dkt. Nos. 46-52. Among those was a joint motion from defendants Steven Lewis and Hinkle, asking the court to

suppress evidence obtained at a search of a residence on North 45th Street in Milwaukee, "and/or to grant an evidentiary hearing to determine whether there has been a *Franks* violation warranting the suppression of evidence based on false, omitted, and misleading statements included in and omitted from the Affidavit submitted in support of the search warrant." Dkt. No. 52 at 1.

After the parties had briefed that motion, Judge Joseph held a counsel-only status hearing regarding the defendants' request that she schedule a Franks hearing. Dkt. No. 59. The minutes from that status conference state that "[t]he court ha[d] additional questions re defendants' request for a Franks Hearing." Id. at 1. The government first "addresse[d] questions from the court as to the date the conversation took place that is referenced in paragraph 7 of Exhibit A of defendants' motion." Id. The government also "[d]irect[ed] attention to a letter produced in discovery from a case agent, relating a conversation from a CS." Id. The minutes reflect that Judge Joseph "allow[ed] briefings regarding the court's concerns as to paragraph seven" of the affidavit in support of the search warrant. Id. She set a deadline of September 14, 2018 for the defendants to "file supplemental letters re court's concerns," and a deadline of September 19, 2018 for "[g]ovt to file replies." Id. at 2. The minutes also indicate that "[t]he court will defer to the govt re supporting documents or reports." Id. The parties submitted letter responses on those deadlines. Dkt. Nos. 60, 61.

Judge Joseph issued a single order, denying the request for a Franks hearing and recommending that the court deny the motion to suppress. Dkt.

No. 62. Regarding the request for a <u>Franks</u> hearing, she found that the defendants had not made the required "substantial preliminary showing" that the affiant, Special Agent Nate Peskie of the Wisconsin Department of Justice's Criminal Investigation Division, made false statements intentionally or with reckless disregard for the truth. <u>Id.</u> at 7-12. Regarding the motion to suppress, she found that although the affidavit supporting the warrant did not establish probable cause, the warrant was not "so blatantly defective that the executing officers could not have reasonably presumed it to be valid." <u>Id.</u> at 18. She recommended that this court uphold the search based on the good-faith exception to the exclusionary rule. <u>Id.</u>

The defendants have objected both to Judge Joseph's order denying their request for a <u>Franks</u> hearing and her recommendation regarding the motion to suppress. Dkt. No. 70. The parties have briefed the objections.

B.     <u>Facts</u>

The defendants' objections did not dispute Judge Joseph's recitation of the facts, nor did the government's response. The court reproduces below the facts as Judge Joseph recounted them:

> On September 3, 2017, Milwaukee County Circuit Judge Borowski issued a warrant to search 5272 North 45th Street, Milwaukee, Wisconsin. The application for the search warrant was based on an affidavit signed by Nate Peskie, a Special Agent with the Wisconsin Department of Justice Division of Criminal Investigation. (Exh. A ¶ 1.) Peskie was part of a local, state, and federal law enforcement investigation of Theresa Lewis. (Defs.' Br. ¶ 9.)

> Peskie averred that law enforcement had interviewed a confidential informant who told them that Theresa Lewis was working with her cousin, Stephen Lewis, to pick up cocaine

shipments in Texas. (Exh. A ¶ 3.) The informant provided law enforcement with telephone number (414) 949-9152 and claimed that the number was being used by Theresa Lewis to contact the informant. (*Id.*) Peskie further averred that the informant explained that during conversations with Theresa Lewis, the informant referred to the cocaine source location in Texas as "home away from home." The informant also said that Theresa Lewis told the informant that she (Lewis) was going to their "home away from home" with Stephen Lewis and was being paid $1200 to make the trips approximately once a month. The informant spoke to Theresa Lewis about the drug operation as recently as July 10, 2017. (Exh. A ¶ 4.)

Peskie also averred that on May 8, 2017, law enforcement agents received information from the informant who explained that during a call with Theresa Lewis on May 3, 2017, Theresa Lewis said that she was getting ready to make a trip over the weekend and that upon returning from the trip she would "drop it (believed to be drugs)" at Stephen Lewis' house and get paid by him. (Exh. A ¶ 7.)

Peskie averred that the informant is accurate and reliable because: (1) the informant had been providing information to law enforcement since February 2017; (2) the information was substantially against the informant's own penal interest; and (3) the information was consistent with evidence obtained through other law enforcement activity, phone records, and interviews of other confidential sources. (Exh. A ¶ 3.)

Peskie also averred that on March 1, 2017, law enforcement reviewed historical call records obtained through a subpoena for (414) 949-9152, the telephone number utilized by Theresa Lewis. Those records indicate numerous contacts between Theresa Lewis' number and (972) 734-1111 a Dallas, TX telephone associated with "several Milwaukee area drug cases." (Exh. A ¶ 5.)

Peskie also averred that on April 27, 2017 agents from DCI and DEA met with members of the Milwaukee FBI Task Force who informed them that the FBI had an open drug investigation linked to Stephen Lewis. The FBI claimed Stephen Lewis was a runner for a large-scale heroin and cocaine distribution network. (Exh. A ¶ 6.)

Peskie stated that a "reliable source" informed law enforcement that Theresa Lewis left Milwaukee on August 11, 2017 for a drug trip to Houston, TX and returned to Milwaukee on August 14, 2017. (Exh. A ¶ 8.) The same "reliable source" informed law

enforcement that Theresa Lewis left Milwaukee on September 1, 2017 and was heading to Texas on a drug trip. Peskie believed the "reliable source" to be accurate and reliable because Peskie had utilized information from the same "reliable source" in the past and found it to be reliable and correct. (*Id.*)

Peskie further averred that based on monitoring of Theresa Lewis' cell phone, authorized pursuant to a "State of Wisconsin Pen/Trap & Trace warrant" obtained on September 2, 2017, he became aware that Theresa Lewis' phone stopped at a gas station in Livingston, TX on September 2, 2017. (Exh. A ¶¶ 9-10.) A follow-up call to the Livingston police department ascertained that "Theresa Lewis was in the company of several black males, and that two vehicles were possibly associated with Theresa Lewis, a silver VW and a white Hyundai." (*Id.*) Peskie subsequently observed a white Hyundai and a silver VW hatchback crossing the border into Wisconsin on September 2, 2017[2] at 1:45 p.m., and that the VW was ultimately stopped on I-94 under the North Avenue overpass, where Theresa Lewis was found seated in the back seat. (Exh. A ¶ 11.)

Milwaukee Police Department (MPD) officers monitoring 5272 N. 45th Street prior to the traffic stop of the vehicle of which Theresa Lewis was a passenger on September 2, 2017, did not note any vehicles parked in the front or rear of 5272 N. 45th Street that "were known to be associated with this residence." (Exh. A ¶ 12.) The MPD officers later saw a white Hyundai parked at the rear of 5272 N. 45th Street. (Exh. A ¶ 13.) Stephen Lewis was seen leaving the rear of that residence and entering the white Hyundai after which a traffic stop was attempted, Stephen Lewis fled, and was ultimately arrested. (Exh. A ¶ 14.) The Hyundai was searched and law enforcement recovered one corner cut of cocaine lying beneath the front driver's seat. Stephen Lewis denied having been at 5272 N. 45th Street. (Exh. A ¶¶ 14-15.)

---

[2] Paragraph 9 of the Peskie Affidavit references September 2, 2017 as the date Peskie obtained a pen register/trap and trace warrant from Judge Borowski. (Exh. A ¶9.) It appears the events detailed in the subsequent paragraphs also occurred on September 2, 2017, but it is not entirely clear. It is irrelevant to this decision whether the events that occurred after Judge Borowski issued the pen/trap and trace warrant occurred on September 2, 2017 or on September 3, 2017, the date he signed the search warrant and agents executed it.

Finally, Peskie averred that law enforcement subsequently returned to 5272 N. 45th Street and knocked at the front door, but received no response. (Exh. A ¶ 17.) While at the front door, a law enforcement officer smelled the odor of "fresh" marijuana in the area of the front door, and with the information that Theresa Lewis was in the company of several black males while in Livingston, TX at the gas station, the law enforcement officer believed a second individual was inside the residence. (*Id.*) Law enforcement officers then entered the residence using a key recovered from Stephen Lewis. (*Id.*) Peskie further states that: the residence was "frozen and secured" by law enforcement; the residence was not searched; and law enforcement officers were waiting for a search warrant to search the residence. (*Id.*)

Dkt. No. 62 at 2-5.

## II.  MOTION TO SUPPRESS AND REQUEST FOR <u>FRANKS</u> HEARING

### A.  The Defendants' Arguments

The defendants asked the court to suppress evidence obtained from a September 3, 2017 search of a residence at 5272 N. 45th Street, Milwaukee, Wisconsin. Dkt. No. 52. Most of the motion focused on the defendants' contention that the affidavit submitted to Judge Borowski in support of the warrant contained false and misleading statements, or omitted facts, in violation of <u>Franks</u>. <u>Id.</u> at 2. The motion also alleged that the officers entered the residence before they obtained a warrant, and that that entry violated the Fourth Amendment. <u>Id.</u> at 14-15. Finally, they argued that the warrant failed to state probable cause that officers would find contraband or evidence at the 5272 North 45th Street residence. <u>Id.</u> at 2.

In support of their request for a <u>Franks</u> hearing, the defendants identified the following alleged false and/or misleading statements in the affidavit, and several omissions:

\*      Paragraph Seven:

> On May 8th, 2017, a DCI S/A received information from the CS who explained that during a call with Theresa LEWIS on May 3rd, 2017, Theresa LEWIS said that she was getting ready to "make a trip" over the weekend. Theresa LEWIS told the CS that immediately upon returning from "the trip" she would drop it (believed to be drugs) off at Stephen LEWIS' aka "Lil Steve's" house and get paid by him. According to the CS, this conversation with LEWIS was done with LEWIS using telephone number 414-949-9152.

Dkt. No. 52-1 at ¶7.

The defendants argued that their review of the discovery, "including letters sent by the CS to law enforcement," revealed that on May 3, 2017, Theresa Lewis did not tell the informant that she was going to deliver anything to Stephen Lewis' house (or to any other house). Dkt. No. 52 at 7 (citing a discovery document not provided to the court). They asserted that they had listened to a recording of a May 3, 2017 jail call between the CS and Theresa Lewis, and that at no time during the fifteen-minute call did Theresa Lewis say she planned to take anything to Stephen Lewis' house. Id.

\*      Paragraph Ten:

> That your affiant ultimately obtained information during the monitoring of this cellular phone that Theresa Lewis while northbound from the Houston, Texas area had stopped in Livingston, Texas at a gas station; a subsequent follow-up phone call to the local police department (Livingston PD) ascertained that Theresa Lewis was in the company of several black males and that two vehicles were possibly associated with Theresa Lewis with those vehicles being a silver VW and a white Hyundai;

Dkt. No. 52-1 at ¶10.

Recall that Theresa Lewis stopped at the Texas gas station on September 2, 2017. The defendants alleged that there were two false statements in

paragraph Ten. First, they argued that Peskie's assertion that "two vehicles were possibly associated with Teresa [sic] Lewis with those vehicles being a silver VW and a **white Hyundai**" was false. Dkt. No. 52 at 8 (quoting dkt. no. 52-1 at ¶10) (emphasis in defendants' brief). They stated that law enforcement reports disclosed in discovery reported that the clerk at the Livingston gas station had told law enforcement that he recalled seeing a silver Volkswagen and a "white vehicle"—no model specified—at the gas pumps. Id. (citing a discovery document not provided to the court). The defendants asserted that the discovery further indicated that Theresa Lewis's cell phone pinged at a gas station in Bryant, Arkansas at 12:14 a.m. on September 3, 2017 (the wee hours the next day). Dkt. No. 52 at 12. The discovery revealed that Peskie contacted local law enforcement in Bryant who told him that "the 'clerk remembered two vehicles being parked at the gas pumps, the clerk stated one of the vehicles was a silver Volkswagen hatchback. And the other was a new **white Honda**.'" Dkt. No. 52 at 12 (quoting a discovery document not provided to the court) (emphasis in defendants' brief). In other words, neither clerk mentioned a Hyundai.

Second, the defendants argued that video surveillance from the Livingston, Texas gas station showed that Theresa Lewis was with *two* black males, not "several." Id. at 8. The clerk at the Arkansas gas station recalled seeing two black males "in the new white Honda that apparently filled up with gas and paid at the pump." Id. at 12-13.

\*      Paragraph Eleven:

> That your affiant, subsequent thereto at approximately 1:45 p.m., observed a white Hyundai and a silver VW hatchback crossing the border into Wisconsin; that the VW was ultimately stopped in [sic] I-94 under the North Avenue overpass at which time affiant ascertained that Theresa Lewis was seated in the back seat;

Dkt. No. 52-1 at ¶11.

The defendants argued that the discovery did not support Peskie's statement that he saw a *white Hyundai* cross the border into Wisconsin on the afternoon of September 3, 2017. Dkt. No. 52 at 8-9. The defendants asserted that discovery showed that law enforcement monitored two "vehicles of interest" crossing the border into Wisconsin: (1) a silver Volkswagen GTI with two black males in the front seats and a black female in the backseat, and (2) a Volkswagen Passat (no color specified) with a black female driver and a black male passenger. Id. at 9. The defendants maintained that discovery showed the Passat had fled from police. Id.

The defendants also reiterated that Peskie's assertion that Theresa Lewis had been seen in Texas in a car with "several" black males caused officers to enter the residence on North 45th Street without the warrant, because it gave them false reason to believe that there might be a "second" person (other than Stephen Lewis, whom law enforcement had seen leaving the house) inside. Id. They point out that when officers stopped the silver Volkswagen hatchback after it crossed into Wisconsin, Theresa Lewis and *two* black males (Lorenzo Sandlin and Johnny Walker)—the same number of men that the clerk at the Texas gas station had reported seeing—were inside, but Peskie did not state

that in the affidavit. Id. at 13. Only Peskie's affidavit referred to "several" black males, but that reference to "several" caused officers to enter the North Avenue residence without the warrant.

Finally, the defendants argue that paragraph eleven of Peskie's affidavit failed to state that law enforcement searched the silver Volkwagen in which Theresa Lewis, Lorenzo Sandlin and Johnny Walker had been driving, and found no contraband. Id. They also noted that, contrary to what Peskie represented in the affidavit, the North Avenue overpass crosses I-43, not I-94. Id.

> \*     Paragraph Seventeen:
>
> That affiant along with other Special Agents with the Wisconsin Department of Justice returned to 5272 North 45th Street and proceeded to knock on the door but received no response; that SA Gajevic, while at the front door, was able to able [sic] to detect the odor of fresh marijuana coming from the area of the front door of the residence; based upon the information received that Lewis was in the company of several black males while in Livingston, Texas at the gas station, case agents proceeded to enter into the residence believing that a second individual was inside; this location was then searched for an additional individuals [sic] but none were located; furthermore, case agents used keys recovered from Stephen Lewis to enter into this residence; at the present time, the residence of 5272 North 45th Street is frozen and secured by DCI special agents; furthermore, this premises has not been searched and case agents are awaiting approval for the application of a search warrant authorizing a search of this location;

Dkt. No. 52-1 at ¶17.

The defendants contended that the 5272 residence was not "frozen and secured" as the Peskie affidavit says. Id. at 9. They say that officers saw Stephen Lewis leaving the south door of the residence at 3:36 p.m., and that they arrested him at 3:40 p.m. Id. at 10. The defendants asserted that the

discovery showed that the officers were "immediately sent" to the residence, but that the judge did not authorize the warrant until 6:50 p.m. Id. The defendants concluded that because officers were sent to the residence some three hours before the search warrant issued, "law enforcement officers were in the house for several hours from the time law enforcement officers entered it until the search warrant was authorized . . . ." Id. The defendants further contended that because law enforcement already had stopped the silver Volkswagen (with Theresa Lewis and the two black males observed in her company in Texas inside) they could not have believed that another individual from the alleged Texas drug run was inside the residence. Id. at 13.

* Paragraph Three:

On February 28, 2017, Special Agents from the Wisconsin Department of Justice, Division of Criminal Investigation (DCI), conducted an interview of an identified citizen witness who wished to be a confidential source (CS). During the interview, the CS explained that he/she has been in contact with Theresa LEWIS. Through a phone conversation, LEWIS told the CS that she (LEWIS) was making trips to Texas to pick up cocaine shipments with "Lil Steve" and "Lil Mike". The CS explained that "Lil Steve" is Theresa LEWIS's cousin, who agents identified as Stephen LEWIS. Stephen LEWIS had been previously purchasing one (1) to two (2) kilograms of cocaine per month from the CS. According to the CS, this conversation with LEWIS was done with LEWIS using telephone number 414-949-9152. Affiant believes this confidential source to be accurate and reliable based off the following:

i. The CS has been providing information since February of 2017, and that information is substantially against the CS own penal interest,

ii. The information provided is consistent with evidence obtained through independent law enforcement activity, corroborated by bothphysical [sic] surveillance, phone records and interviews of other confidential sources.

12

Dkt. No. 52-1 at ¶3.

The defendants argued that the affidavit failed to inform the reviewing judge that (a) at the time the confidential source provided the information referenced in the affidavit, he/she was incarcerated for possession with intent to deliver drugs; (b) the confidential source had prior convictions for drug possession and resisting arrest; and (c) the confidential source was cooperating with law enforcement in hopes of a sentence reduction. Id. at 10. They contend that "[a]ll of the above facts about the CS were included in DEA SA Gorenc's federal affidavit filed in support of a federal GPS warrant for [Theresa Lewis]'s cell phone on July 20, 2017." Id. They assert that Peskie left this information out of the search warrant affidavit, and that he "deliberately omitted" it from the affidavit in support of the request for a pen/trap and trace order. Id. The defendants also averred that the affidavit asserted that the confidential source was reliable based on "other confidential sources" but did not list those other sources. Id. at 10-11.

\* Paragraph Five:

A DCI S/A obtained Sprint tolls for suspect telephone 414 - 949-9152 through a subpoena. On March 1, 2017, a DCI S/A reviewed historical call records from Sprint of Theresa Lewis's identified telephone number of 414-949-9152. The records showed call information from 12/30/2016 thru 02/27/2017. Upon examining the tolls, it was observed that the above listed number was still being operated and utilized by Theresa LEWIS. Upon analyzing the telephone records, it was noted that Theresa LEWIS's telephone number of 414-949-9152 had 26 total calls and 50 text messages to the telephone number of 972-734-1111 (a Dallas, Texas telephone associated with several Milwaukee area drug cases). A DEA S/A obtained information for suspect telephone 972-734-1111 through a subpoena. The subpoena revealed the telephone number to be an inmate communications provider.

Dkt. No. 52-1 at ¶5.

The defendants contended that the affidavit made the following misleading statements: (1) that Theresa Lewis' cell phone number had "numerous" contacts with (972) 734-1111; (2) that (972) 734-1111 was a Dallas, Texas telephone associated with several Milwaukee area drug cases; and (3) that (972) 734-1111 was associated with an inmate communications provider. Dkt. No. 52 at 11. The defendants stated that public records indicated that (972) 734-1111 belonged to Securus—an inmate communications provider—"used by the Wisconsin Department of Corrections facility at Boscobel, WI prison where the [confidential source] was incarcerated in early 2017." Id. at 11. The defendants say that, upon information and belief, the confidential source used the #1111 number to contact Theresa Lewis' phone number. Id. They assert the affidavit improperly leads the reader to believe that Theresa Lewis and her cell phone are connected to Milwaukee area drug cases—instead of to an inmate at a Wisconsin prison. Id. And they allege that the same misleading statements appeared in the affidavit in support of the application for a pen register/trap and trace. Id.

* Paragraph Eight:

On August 11th, 2017, case agents received information that Lewis was leaving Milwaukee, Wisconsin and making a trip to the Houston, Texas area from a reliable source. Lewis returned to Wisconsin on August 14th, 2017. Agents were unable to identify the vehicle used by Lewis during this trip. This is consistent with LEWIS travelling to Texas to obtain controlled to [sic] transport back to Milwaukee in the manner previously described by the CS. Affiant is aware from this reliable source that LEWIS departed the Milwaukee County area on 9/1/17 heading southbound out of state and affiant

believed that LEWIS was heading to Texas on a drug trip. Affiant believes this reasonable source to be accurate and reliable because your affiant has utilized information from this same source in the past and found it to be reliable and correct.

Dkt. No. 52-1 at ¶8.

The defendants argued that the affidavit's use of the term "reliable source" in paragraph eight implied that the "reliable source" was a human being. Dkt. No 52 at 12. The defendants argued that, "upon information and belief," the "reliable source" mentioned in paragraph eight "[was] actually cell phone location data obtained pursuant to a federal GPS warrant authorized on July 20, 2017. Id. at 12 (citing dkt. no. 52-3).

B.   The Government's Arguments

The government responded to the motion to suppress, but did not provide any exhibits relating to the request for a Franks hearing. Dkt. No. 54. The government contended that the defendants could not meet the necessary "substantial preliminary showing" for a Franks hearing because none of the defendants' complaints were "accompanied with the requisite offer of proof to obtain a Franks hearing." Dkt. No. 54 at 8. It stressed that even if the issues the defendants had identified with the affidavit constituted "false" or "misleading" statements or omissions, the defendants could not show that Peskie acted intentionally or with reckless disregard when making those statements or omitting information. Id. Regarding the white Hyundai, the government contended that "whether the car was manufactured by Honda or Hyundai is immaterial to a probable cause determination." Id. at 11. It argued that a second vehicle possibly had traveled to Houston with Theresa Lewis, so

15

even after stopping her, law enforcement "had reason to believe that another vehicle may have gone on the trip to Texas and returned with the cocaine shipment." Id. at 11.

C.     The Defendants' Reply

The defendants' reply brief stated that "the government has now provided a copy of an alleged 'note' regarding the phantom Hyundai." Dkt. No. 56 at 1. The defendants argued that their motion sufficiently alleged that the facts in the affidavit did not match the facts in the police reports and other discovery. Id. at 2.

D.     September 6, 2018 Hearing and Additional Briefing

As noted, Judge Joseph held a counsel-only status conference on September 6, 2018. Dkt. No. 59. The court has only the minutes—not the transcript—from that status conference. Dkt. No. 59. It appears that the hearing began with the government "address[ing] questions from the court as to the date the conversation took place that is reference in paragraph 7 of Exhibit A of defendant's motion." Id. This is the conversation in which the confidential source informed law enforcement that Theresa Lewis allegedly said she was making a trip over the weekend and would drop something at "Lil Steve's" house and get paid. The government also "[d]irect[ed] attention to a letter produced in discovery from a case agent, relating a conversation from a CS." Id. The government appears to have argued that "[t]he substance that was memorized [sic] in the affidavit [was] backed up by the letter from the CS." Id. The defense appears to have responded that it did not recall receiving the letter

referenced by the government, and noted that conversation with the CS was not recorded. Id. Defense counsel asked the court to advise the parties of its specific concerns, and to allow defense counsel to address those concerns in a brief. Id. The court agreed to allow the parties to brief "the court's concerns as to paragraph seven," specifically asking them to address the significance of paragraph seven and whether it made "a difference as to probable cause." Id.

The defendants submitted a letter brief, dkt. no. 60, to which they attached a letter from the confidential source to a case agent, recounting a conversation the confidential source had with Theresa Lewis on May 3, 2017, dkt. no. 60-1, and a page of handwritten notes containing a timeline, starting with "arrive in Houston" at 12:45, dkt. no. 60-2. The page of notes contained the notation, "09/03 12:14 am Exxon 22755 I30, Bryant AR. 72022 Silv. VW + WHI Hyaundai [sic]/Civic (newer)." Dkt. No. 60-2. The government's response brief explained that after the defendants had identified the discrepancy between the police report and the Peskie affidavit, the government had "produced the case agent's notes and a report, which reveal that the two possible vehicles associated with Theresa Lewis, according to local law enforcement in Arkansas, were a silver Volkswagen and 'a white Hyundai/Civic. (newer),' that is it was a white Hyundai or Civic, which is a Honda." Dkt. No. 61 at 3. The government asserted that, at best, paragraph ten of the affidavit contained a typographical error (stating that the reference to a Hyundai was obtained from law enforcement in Texas, when it was made by law enforcement in Arkansas). Id.

The government concluded by stating that "the defendants are making the serious accusation that Special Agent Peskie either perjured himself or acted with reckless disregard of the truth in an effort to fabricate probable cause where none existed," and argued that the plaintiffs had failed to make the substantial showing of intentional or reckless behavior necessary to warrant a <u>Franks</u> hearing. <u>Id.</u> at 4.

## III. JUDGE JOSEPH'S ORDER, REPORT AND RECOMMENDATION

After the briefing described above was complete, Judge Joseph denied the defendants' request for a <u>Franks</u> hearing and recommended that this court deny the motion to suppress. Dkt. No. 62. After recounting the facts, Judge Joseph analyzed the <u>Franks</u> motion. <u>Id.</u> at 5.

### A. Order Denying *Franks* Hearing

Judge Joseph observed that defendants are entitled to a <u>Franks</u> hearing only when they make a "'substantial preliminary showing that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause.'" <u>Id.</u> at 5-6 (quoting <u>United States v. Maro</u>, 272 F.3d 817, 821 (7th Cir. 2001)). She emphasized that this inquiry "is 'not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false.'" <u>Id.</u> at 6 (quoting <u>United States v. Schulz</u>, 586 F.3d 526, 531 (7th Cir. 2009)). She acknowledged that for the defendants to meet their burden of a substantial preliminary showing, they "must make allegations,

accompanied by an offer of proof, that are 'more than conclusory and must be supported by more than a mere desire to cross-examine.'" Id. at 7 (quoting Franks 438 U.S. at 171). Finally, she noted that the Seventh Circuit has stated that "'*Franks* hearings are rarely required.'" Id. (quoting United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009)).

Judge Joseph analyzed only the defendants' primary challenges, opining that some of the defendant's alleged "false" statements (such as the defendants' argument that while discovery indicated that witnesses had seen only two men with Theresa Lewis, Peskie had said there were "several") did not warrant discussion. Id.

Judge Joseph began with paragraph seven of the Peskie affidavit. Id. She recounted the parties' arguments, noting that the government had argued that Agent Peskie relied on a letter from the informant to Agent Peskie. Id. at 8. She cited the post-September 6, 2018 supplemental briefing. Id. (citing Dkt. No. 60-1). Judge Joseph found that even if she accepted that the defendants had shown that the informant lied to the case agent, the defendants had not shown the state of mind of case agent; they had not shown why *Peskie* should have had obvious reason to doubt the truth of the informant's statements. Id. at 8.

Regarding paragraphs ten and eleven—the ones referencing a "White Hyundai"—Judge Joseph observed that the defendants had argued that no "white Hyundai" had appeared in the police reports describing observations of Theresa Lewis's trip from Texas to Wisconsin. Dkt. No. 62 at 9. She noted that the government had "counter[ed] that the case agent's report indicates that he

received information from local law enforcement in Bryant, Arkansas, who stated that a silver Volkswagen and a white Hyundai or Honda Civic may have been associated with Theresa Lewis. (Docket #60 at 3-4, Docket #61-1)." Id. at 9.

Judge Joseph commented that "although Peskie only included the Hyundai in the affidavit, the case agent's noted indicated that a Hyundai *or* a Honda Civic were associated with Theresa Lewis." Id. She concluded that while Peskie may have been negligent in failing to include in the affidavit the exact language from the Arkansas police report, his statement was not false. Id. at 10. She also found that Peskie relied on information he obtained from another law enforcement agent who had, in turn, received information from law enforcement in Arkansas. Id. She remarked that even if both sources had lied, the defendants had not demonstrated that Peskie himself either lied or acted recklessly regarding the truth. Id. at 10.

Regarding paragraph eleven specifically, Judge Joseph stated that even if Peskie had lied about observing a White Hyundai crossing the border to Wisconsin, this information "[was] not material to the probable cause determination whether law enforcement actually saw the white Hyundai cross the border into Wisconsin, as will be discussed, what is material is that law enforcement observed the white Hyundai at the residence." Id.

Regarding paragraph eight—the paragraph that referred to a "reliable source"—Judge Joseph agreed with the defendants that the affiant's reference to a "reliable source" implied that the "reliable source" was a human being. Id.

at 11. She again concluded, however, that the defendants had not shown that Agent Peskie had intentionally or with reckless disregard for the truth misled Judge Borowski by referring to a "reliable source" in this way. Id. at 11.

Judge Joseph then analyzed the "informant's motive," relative to the defendants' objection to paragraph three of the affidavit. Id. at 12. Judge Joseph found that the allegedly omitted information—"that the informant was cooperating with law enforcement to receive a sentence reduction or to receive immunity"—would not have defeated the probable cause determination. Id. at 12. She found that the affidavit "was clear that the informant was providing information against his own penal interest. He admitted to making monthly sales of cocaine to Stephen Lewis." Id. (citing Dkt. No. 52-1 at ¶3). She concluded, "It would be clear to the issuing judge that the informant was not acting simply as a good Samaritan or out of civic duty, but had something to gain from providing the information." Id.

B.    Recommendation to Deny the Motion to Suppress

Judge Joseph noted that in analyzing the motion to suppress, she was obligated to follow a two-step sequential analysis: to analyze whether substantial evidence in the record supported the judge's decision to issue the warrant and, if the warrant was not supported by probable cause, to determine whether the good faith exception to the exclusionary rule could save the warrant. Id. at 13. (citing United States v. Lloyd, 71 F.3d 1256, 1262 (7th Cir. 1995); United States v. Leon, 468 U.S. 897, 920-24 (1984)). She recognized where the affidavit was the only evidence presented to the judge who issued the

warrant, "'the warrant must stand or fall solely on the contents of the affidavit.'" Id. at 14 (quoting United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002)).

Judge Joseph observed that the only connection the warrant established between Stephen Lewis and the 5272 North 45th Street residence was that "Stephen Lewis was observed coming from the rear of the residence and keys recovered from Lewis opened the door to the residence." Id. at 15. She questioned the strength of this connection—the affidavit had not, for example, mentioned prior surveillance of Stephen Lewis at the residence or a public records check of the residence. Id. Judge Joseph questioned whether this evidence sufficiently tied Stephen Lewis to the residence. Id.

Without resolving that question, Judge Joseph analyzed whether the affidavit established probable cause that evidence of drug trafficking activity would be found at the residence. Id. She observed that the affidavit attempted to make this connection in several paragraphs: (1) in paragraph four, Peskie stated that Theresa Lewis told the confidential informant that she was being paid $1,200 to make trips to Texas with "Lil Steve"; (2) in paragraph seven, Peskie described a May 3, 2017 conversation between the confidential source and Theresa Lewis (during which Theresa Lewis allegedly spoke of making a drug trip and dropping "it (believed to be drugs) off at Stephen Lewis' aka 'Lil Steve's' house and get paid by him"; and (3) in paragraphs eight, ten and fourteen, the affidavit attempted to connect Theresa Lewis' September 1, 2017 Texas trip to the residence. Id. at 15-16.

Judge Joseph concluded that "the evidence connecting Theresa Lewis' alleged September drug run to Stephen Lewis' residence is too tenuous." Id. at 17. She observed that the affidavit alleged that Theresa Lewis made a drug run in August 2017, but did not mention surveillance of Theresa Lewis returning to Stephen Lewis' home after that alleged trip. Id. She noted that the affidavit did not allege that Theresa Lewis was found with drugs after her return from Texas. Id. She observed that the affidavit did not place Theresa Lewis at or near the residence after returning from Texas in September. Id. at 16. She concluded, "What is left, then, is the presence of the Hyundai (one of the two cars 'possibly' associated with Theresa Lewis) at the residence." Id. Judge Joseph remarked that "if the affiant wants the reviewing judge to conclude that the connection between the Texas drug run and the residence is the Hyundai, the affidavit must establish facts to show that the occupants of the Hyundai delivered drugs to the residence. It fails to do so." Id.

Judge Joseph then spent a paragraph explaining why the affidavit's "nexus" section added "very little, if anything at all, to establish that drugs would be found at the residence." Id. She found that the affidavit failed to sufficiently establish a nexus between the alleged drug dealing operation and the residence. Id.

Despite that finding, Judge Joseph did not recommend that this court grant the motion to suppress. Id. at 18. Instead, she found that the search could be saved under the good faith exception to the exclusionary rule. Id. She observed that the "very fact that law enforcement obtained a warrant indicates

23

good faith in conducting the search." Id. at 17 (citing United States v. Leon, 468 U.S. 897, 905 (1984)). Applying Leon, Judge Joseph determined that the warrant was not "so blatantly defective that the executing officers could not have reasonably presumed it to be valid." Id. at 18. She found that the affidavit established that Theresa Lewis and Stephen Lewis probably were engaged in drug dealing. Id. She remarked that the affidavit averred that officers observed Stephen Lewis coming from the rear of the residence and had keys to the residence. Id. She concluded, "Although I found the nexus between drug dealing and the residence deficient, the affidavit attempted to show that evidence of Theresa Lewis' drug run from Texas would be found at the residence." Id. at 18. She recommended that this court deny the motion to suppress. Id.

C.    Objection to the Report and Recommendation

The defendants objected on four grounds. Dkt. No. 70.

First, they argued that this court should remand the case to Judge Joseph so that she can consider new evidence she did not have when she made her decision—evidence suggesting that the white Hyundai never traveled to Texas in late August-early September 2017. Id. Specifically, the defendants argue that when Stephen Lewis picked up the white Hyundai from Hertz Rental Car on August 28, 2017, it had 11,433 miles on it; when it crashed following a police chase on September 3, 2017, it had 11,500 miles on it. Id. The defendants assert that the white Hyundai picked up by Stephen Lewis and seen at the 5272 N. 45th Street residence could not have been the same white

Hyundai alleged to have been associated with Theresa Lewis in Texas and Arkansas in early September 2017. Id. The defendants also assert that while discovery showed that law enforcement referred to this second car as a generic white vehicle, a white Honda and a VW Passat, the affidavit stated unequivocally that the second car associated with Theresa Lewis was a white Hyundai. Id. at 8. The defendants argue that the white Hyundai alleged to have traveled south and back was "a creature of fiction." Id. at 6.

Second, the defendants challenged the procedure Judge Joseph used to reach her decision to deny their request for a Franks hearing. They argue that by holding a pre-Franks hearing and relying on the government's supplemental filings to deny the motion, Judge Joseph committed error. Id. at 9 (citing United States v. McMurtrey, 704 F.3d 502, 504 (7th Cir. 2013)). The defendants say that their motion to suppress postulated that "the white Hyundai" referenced in paragraph ten and eleven was a fiction created by law enforcement to tie Theresa Lewis's Texas drug caravan to Stephen Lewis' residence. Id. at 10-11. They say that Judge Joseph erred by hearing argument on whether to schedule a Franks hearing (a so-called "pre-Franks" hearing) and by relying on evidence provided at that hearing and in supplemental briefing to decide that a Franks hearing was unnecessary. Id. at 11-12. The defendants say this procedure violated the Seventh Circuit's decision in McMurtrey, 704 F.3d at 505. Id. at 11.

Third, the defendants argue that Judge Joseph ought to have held an evidentiary hearing on the defendants' allegation that law enforcement illegally

searched the residence before obtaining a warrant. Dkt. No. 70 at 12. They assert that Judge Joseph "never discussed or ruled on the Defendants' claim that the initial entry into the home was illegal and tainted the subsequently-obtained warrant." Id. at 70. The defendants say that the affidavit stated only that officers smelled "fresh" marijuana coming from the area around the front door of the residence. Id. They also speculate that "the officers did more than a cursory search for persons when they searched Residence the first time[,]" and they speculate that Peskie may have sought the search warrant based on what officers observed during that initial, allegedly illegal entry. Id. at 14.

Finally, the defendants allege that Judge Joseph erred in not holding a Franks hearing because she did not consider the defendants' claims cumulatively. Dkt. No. 70 at 15. They argue that "[t]he effect of misrepresentations and omissions on the existence of probable cause in a Franks challenge must be considered cumulatively." Id. (citing United States v. Stanert, 762 F.2d 775, 782 (9th Cir. 1985); United States v. Milton, 153 F.3d 891, 896 n. 3 (8th Cir. 1998); United States v. Vigeant, 176 F.3d 565, 572, n. 8 (1st Cir. 1999); United States v. Macias-Perez, Case No. 11-CR-2024, 2011 WL 2532923, at *12 (N.D. Iowa June 24, 2011). The defendants argue that the identified omissions and false statements, considered together, tend to show that the affidavit "was carefully constructed to mislead the issuing magistrate." Id. at 17 (citing United States v. Harris, 464 F.3d at 737). The defendants argue that they are "limited to circumstantially proving that [Peskie] knew or should have known he was misleading the issuing judge," and that here, the "myriad

allegations," considered cumulatively, meet the defendants' <u>Franks</u> burden. <u>Id.</u> at 19.

Alternatively, the defendants ask the court to reject Judge Joseph's recommendation and grant the motion to suppress. Dkt. No. 70 at 21. They say that Judge Joseph erroneously concluded that Judge Borowski had enough information to evaluate the credibility of the confidential informant. <u>Id.</u> at 20. They argue that Judge Joseph's statement that "it would be clear to the issuing judge that the informant was not acting simply as a good Samaritan or out of civic duty, but had something to gain from providing the information," dkt. no. 62 at 12, was erroneous. They argue that "[i]t is not the job of the issuing magistrate to assume an informant is reliable. It is the job of the affiant to truthfully justify the need to invade the liberty interests of a person, including by truthfully explaining why an informant ought to be considered reliable." <u>Id.</u> at 21.

D. <u>Government's Response</u>

The government responds that the "new evidence" that the white Hyundai accumulated only sixty-seven miles from the time Stephen Lewis picked it up to the time it crashed "does not identify a material false statement that was intentionally or reckless made[.]" Dkt. No. 75 at 6. The government asserts that "there is absolutely no support in the record showing that Special Agent Peskie was aware of these rental car records at the time he swore the affidavit on September 3, 2017." <u>Id.</u> at 7. It also contends that the affidavit never definitively stated that the white Hyundai traveled to Texas; the affidavit

27

stated that "two vehicles were *possibly associated* with Theresa Lewis[.]" <u>Id.</u> (citing Dkt. No. 52-1 at ¶10).

Next, the government argues that Judge Joseph did not commit procedural error in denying the request for a <u>Franks</u> hearing. Dkt. No. 75 at 9. The government says that Judge Joseph relied on a letter to the case agent from the confidential informant and case notes from agent Peskie about the Theresa Lewis vehicles. <u>Id.</u> at 9-10. It says that "defendants cite no case establishing that Judge Joseph or the government erred by taking note of evidence that had previously been produced in evaluating the serious accusations that form the basis for a <u>Franks</u> challenge." <u>Id.</u> at 10. The government also argues that even assuming Judge Joseph erred, she committed harmless error because the defendants had not met their burden for a <u>Franks</u> hearing. <u>Id.</u> at 11.

The government also contends that officers' entry into the 5272 North 45th Street residence before obtaining a warrant was constitutional. <u>Id.</u> at 12. It states, "[s]ecuring a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." <u>Id.</u> (citing <u>Segura v. United States</u>, 468 U.S. 796, 810 (1984)). The government questions why the defendants have challenged the initial entry, because "the defendants cannot and have not pointed to one shred of any alleged illegally-obtained evidence that was used to obtain the search warrant." <u>Id.</u>

The government asserts that Judge Joseph did not err by considering the defendants' allegations in a piecemeal fashion. Id. at 13. It comments that "Judge Joseph correctly concluded that none of the complaints were accompanied by the requisite offer of proof showing how or why they were false and made intentionally or in reckless disregard of the truth *at the time that they were made*." Id. at 15 (emphasis in original).

The government concludes that the court should adopt Judge Joseph's recommendation because "the search warrant affidavit was amply supported by probable cause." Id. at 16. It contends that Judge Joseph erred in concluding that the search warrant failed to connect the residence to the drug run. Id. at 21. Specifically, it proffers that from the facts of the affidavit, it would have been reasonable for the state court judge to conclude "that the white Hyundai may have been the second vehicle on the return trip from Houston and may have contained the cocaine shipment, which may have been delivered to 5272 North 45th Street while the MPD officers conducting surveillance of the residence briefly responded to assist with the traffic stop." Id. at 21-22.

E.    Defendants' Reply

The first six pages of the defendants' reply imagines what Agent Peskie's affidavit would have looked like if it "had been true and accurate." Dkt. No 78 at 1-7. They contend that the imagined affidavit would not have established probable cause for issuing the warrant. Id. at 7. Most of the reply brief recycles arguments made in their original objection; the defendants argue that the rental car records are compelling, that Judge Joseph violated McMurtrey, that

29

they are entitled to an evidentiary hearing on the initial entry and that they believe the misrepresentations and omissions, taken together, warrant a Franks hearing. Id. at 8-13.

Finally, the defendants argue that the government has taken inconsistent positions regarding probable cause. Id. at 14. They say that the government has argued that the affidavit stated probable cause because "the white Hyundai may have been the second vehicle on the return trip from Houston and may have contained the cocaine shipment" but also has argued that inconsistency between the affidavit and discovery regarding the white Hyundai was not sufficient to warrant a Franks hearing because it was not material to probable cause. Id. at 14-15.

## IV. ANALYSIS

### A. Standards of Review

Judge Joseph's October 5, 2018 decision contained both an order denying the motion for a Franks hearing and a report and recommendation on the defendants' motion to suppress. Dkt. No. 62. The defendants objected to both aspects of the decision. Dkt. No. 70. Separate standards govern this court's review. See United States v. Jefferson, Case No. 07-CR-09, 2009 WL 4549189, at *1 (E.D. Wis. Nov. 27, 2009) (reviewing magistrate judge's order denying Franks hearing under Fed. R. Crim. P. 59(a) and the recommendation on motion to suppress under Fed. R. Crim. P. 59(b)).

Rule 59(a) governs the referral of non-dispositive matters—in this case, the motion for a Franks hearing—to magistrate judges. Parties have fourteen

days to file objections to a magistrate judge's order ruling on a non-dispositive motion, and "[t]he district court must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Id.

Rule 59(b) governs the referral of dispositive motions, such as motions to suppress, to magistrate judges. Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress. Fed. R. Crim P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

B.    Motion For Franks Hearing

The court reviews Judge Joseph's denial of the defendants' motion for a Franks hearing for clear error. Fed. R. Crim. P. 59(a).

In Franks, the Supreme Court held that the Fourth Amendment requires a court to hold a hearing on the veracity of the contents of a search warrant affidavit "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" Id. at 155-56. This "substantial preliminary showing" is "relatively difficult." McMurtrey, 704 F.3d at 509. The showing "requires evidence (1) that the warrant contained

false information; (2) that the false information was included in the affidavit intentionally or with reckless disregard for the truth; and (3) that the false information was necessary to find probable cause and issue the warrant." Id. at 511 (citing Franks, 438 U.S. at 155-56).

1.   *The pre-Franks hearing*

In McMurtrey, the Seventh Circuit "attempt[ed] to clarify some issues concerning the procedures a district court may or must use in evaluating a criminal defendant's motion to suppress evidence under *Franks*." McMurtrey, 704 F.3d at 504. The court explained:

> A district court that is in doubt about whether to hold a *Franks* hearing has discretion to hold a so-called "pre-*Franks*" hearing to give the defendant an opportunity to supplement or elaborate on the original motion. Though permissible, this procedural improvisation is not without risk, as the sparse case law indicates. In such a pre-*Franks* hearing, the natural temptation for the court will be to invite and consider a response from the government. ***However, the court should not give the government an opportunity to present its evidence on the validity of the warrant*** without converting the hearing into a full evidentiary *Franks* hearing, including full cross-examination of government witnesses. We emphasize that the option to hold such a limited pre-*Franks* hearing belongs to the district court, not the defendant. If the defendant's initial *Franks* motion does not make the required "substantial preliminary showing," the court need not hold a pre-*Franks* hearing to provide the defendant a further opportunity to do so.

Id. at 504-05 (emphasis added).

After the parties finished briefing the motion to suppress, but before Judge Joseph ruled on the defendants' request for a Franks hearing, Judge Joseph held a "counsel-only status conference." Dkt. No. 59. The minutes state that "[t]he court ha[d] additional questions re defendants' request for a Franks

Hearing." Id. Assuming the minutes accurately reflect the order in which the parties spoke, the government spoke first, and "addresse[d] questions from the court as to the date the conversation took place that is referenced in paragraph 7 of Exhibit A of defendants' motion." Id. The government also "direct[ed] attention to a letter produced in discovery from a case agent, relating a conversation from a CS" because "the substance that was memorized [sic] in the affidavit is backed up by the letter from the CS." Id. It also appears that the government argued that the defendants had not submitted evidence that the case agent lied about this information. Id.

The defendants responded, indicating that they "d[id] not recall getting the letter that the govt is referencing." Id. They proffered that "[t]he only provided call for May 3rd [the date on which the alleged conversation between the confidential source and law enforcement took place] has no mention of what Ms. Lewis does." Id. The remainder of the hearing appears to have consisted of Judge Joseph's remarks stating that she would "allow briefing regarding the court's concerns as to paragraph seven," and asking "what is the significance of paragraph seven, does it make a difference as to probable cause?" Id.

The defendants assert that this hearing was a "pre-Franks" as defined by McMurtrey. They argue that Judge Joseph committed error by allowing the government to present evidence (such as the letter from a case agent), without converting the hearing into a full-blown Franks evidentiary hearing.

The government responds that the defendants did not object to the procedure at the hearing, that the government did not offer *evidence* at the hearing—it simply relied upon evidence produced in discovery "to refute the defendants' serious accusations that the affiant perjured himself or made material false statements in reckless disregard of the truth," and that the defendants cite no case law establishing that Judge Joseph erred by considering the government's arguments. Dkt. No. 75 at 10. The government contends that even if Judge Joseph committed procedural error, it was harmless, because the defendants cannot make the showing required for a Franks hearing.

Judge Joseph did not calendar the September 6, 2018 hearing as a "pre-Franks" hearing, but the brief summary description of the hearing in the minutes matches the Seventh Circuit's description in McMurtrey. The minutes indicate that Judge Joseph held the hearing because she had questions about the defendants' request for a Franks hearing. The court concludes that the September 6, 2018 hearing was a pre-Franks hearing, subject to the limitations imposed by McMurtrey.

The Seventh Circuit observed that the law on "pre-Franks" procedures was sparse as of 2013, and neither the government nor the defendants have provided cases interpreting McMurtrey. The court has found two cases discussing the procedure. The year after it decided McMurtrey, the Seventh Circuit decided United States v. Glover, 755 F.3d 811, 821 (7th Cir. 2014). In

concluding that the district court erred in denying the defendant's request for a

Franks hearing, the Seventh Circuit stated that

> to obtain a *Franks* hearing, the defendant need not overcome the court's speculation regarding an innocent explanation for the falsity or omission. While reasonable explanations for the omission of the information might well exist, the defendant need not disprove them before the *Franks* hearing itself. See *McMurtrey,* 704 F.3d at 509. If a defendant falls short of the showing required for a *Franks* hearing, the district court has discretion to hold a "pre-*Franks* hearing" for the defendant to supplement his submissions. The government's explanation of discrepancies raised by the defense must wait for the *Franks* hearing itself, however, where the defendant has the opportunity for full cross-examination. *Id.* The district court erred here by offering its own explanation for the omissions and relying on that explanation to deny a *Franks* hearing.

Id. at 820-821.

In Glover, the government argued that the Seventh Circuit should apply the good faith exception; the Seventh Circuit disagreed, distinguishing the cases the government had cited on the ground that "the findings in those cases received deference because the district courts properly held the required *Franks* hearings." Id. at 821. Finally, the government offered the Seventh Circuit a possible innocent explanation for law enforcement's omission of certain evidence from the affidavit. Id. The Seventh Circuit explained that

> [s]uch an explanation may be offered at a *Franks* hearing, but the mere assertion of that rationale is not enough to avoid the hearing. See *McMurtrey,* 704 F.3d at 509. The government later provided the [omitted] information . . . to [the defendant] in its response to his motion to suppress in the trial court. This later disclosure tends to suggest that withholding the information was not necessary to protect Doe's identity, or perhaps that the other details in the affidavit had already been sufficient to identify him. But these are matters to be tested in a *Franks* hearing based on evidence, not resolved on appeal by our speculation.

Id.

In <u>United States v. Bell</u>, Case No. 15-10029, 2016 WL 6561286 (C.D. Ill. Nov. 4, 2016), district court Judge James Shadid described how he conducted a pre-<u>Franks</u> hearing: "On October 20, 2016, the Court held a 'pre-*Franks*' hearing where Defendant was allowed to develop his arguments and the Government was limited to arguing that Defendant has not met the requirements for a *Franks* hearing based on the information contained in the affidavits." <u>Bell</u>, 2016 WL 6561286, at *3. The procedure that Judge Shadid used tracks the procedure prescribed in <u>McMurtrey</u>.

The court concludes that Judge Joseph committed clear error in allowing the government to explain away the discrepancies the defendants had identified in the motion to suppress without converting the September 6, 2018 hearing into a full-blown <u>Franks</u> evidentiary hearing. The government's response to the defendants' objections criticized the defendants' inconsistent arguments. The government says that while the defendants initially argued that paragraph seven of the affidavit contained a false statement, "[a]fter being confronted with a letter written by the confidential source to case agents (which had been produced in discovery prior to their filing of pretrial motions)," the defendants "now contend that the government is precluded from relying on this letter to refute the defendants' serious allegations" that Peskie made false statements. Dkt. No. 75 at 9. The government seems to concede that it provided "the case agent's notes and the letter from the confidential source to the case agent" to Judge Joseph. <u>Id.</u> at 10. It argues, however, that it did not "present evidence" when it directed Judge Joseph's attention to the notes and

the letter, because "no one was called to testify at the September 6, 2018 hearing." Id. The court is at a loss to understand how giving the court information that it did not have in order to rebut the defendants' allegations of false statements or omission does *not* constitute presenting evidence, whether the documents were presented through the testimony of a witness or just handed to the judge. The presentation of the notes and the letter appear to have been an attempt to "back up" one of Peskie's assertions in paragraph seven of the affidavit that the defendants alleged was false, misleading or incomplete. McMurtrey, Glover and Bell state that the purpose of a pre-Franks hearing is to allow a *defendant* to supplement the allegations in his original motion when his written request for a Franks hearing does not make the "relatively difficult" preliminary showing required. The purpose is *not* to allow the government to present evidence to rebut the assertions the defendant made in the request; that is what the Franks hearing itself is for. By allowing the government to present evidence and arguments rebutting the assertions in the defendants' request, Judge Joseph did what McMurtrey says a district court cannot do.

2.    *Harmless error*

The government argues that even if Judge Joseph committed a procedural error, that error was harmless because the defendants "failed to make the requisite 'substantial preliminary showing' to obtain a *Franks* hearing." Id. It argues that the McMurtrey trial court's restrictions on the defendant's ability to cross-examine the search warrant affiant were

impermissible because the defendant had made a showing sufficient to warrant a full Franks hearing; it argues that here, the defendants did not make a sufficient showing to warrant a full Franks hearing, so the fact that Judge Joseph did not give the defendants the opportunity to litigate the agent notes and the letter was harmless. Id. at 10-11. This is a circular argument.

The McMurtrey court pointed out that if a "defendant's initial *Franks* motion does not make the required 'substantial preliminary showing,' the court need not hold a pre-*Franks* hearing to provide the defendant a further opportunity to do so." McMurtrey, 704 F.3d at 505. It appears that in this case, Judge Joseph had questions about whether the defendants' initial Franks motion made the required substantial preliminary showing, because she scheduled an attorneys-only status hearing for the stated purpose of gathering more information about the defendants' request for a Franks hearing. If Judge Joseph had read the defendants' request for a Franks hearing and concluded that it did not make the requisite preliminary showing on its face, she could have denied the motion and moved on to the suppression motion. Rather than denying the motion, she scheduled the hearing, asking for more information. That implies she did not conclude that, on its face, the request for a Franks hearing failed to make the requisite showing. Given that, Judge Joseph had the discretion to give *the defendants* the opportunity to supplement their motion, but not to allow the government to make arguments based on information outside the four corners of the affidavit.

Because the court cannot conclude that Judge Joseph's error was harmless, the court will vacate the order denying the defendants' motion for a <u>Franks</u> hearing and remand the case to Judge Joseph to conduct that hearing. As far as this court can tell, that is the remedy for allowing the government to rebut the allegations in the defendants' request without expanding the status conference into a full evidentiary hearing.

## V. OTHER MATTERS

Judge Joseph also issued a report, recommending that this court deny the defendants' motion to suppress. Dkt. No. 62. Given its ruling on the objection to the denial of the defendants' motion for a <u>Franks</u> hearing, the court will defer ruling on whether to adopt that recommendation. The outcome of the <u>Franks</u> hearing may impact whether Judge Joseph reaches the suppression motion, or whether she amends her recommendation.

The court encourages the parties to present all relevant evidence and arguments to Judge Joseph at the <u>Franks</u> hearing. If Judge Joseph again recommends, post-<u>Franks</u> hearing, that this court should deny the motion to suppress, this court will not consider evidence not presented to Judge Joseph, or arguments not made to her.

Finally, defendant Hinkle has asked the court to order Federal Defender Services of Wisconsin to appoint Attorney John Schiro to represent her, retroactive to July 10, 2018. Dkt. No. 79. Attorney Schiro was privately retained to represent Hinkle, but because she is in state custody, she does not have funds to continue to pay him. The court will grant this motion.

## VI. CONCLUSION

The court **VACATES** that portion of Judge Joseph's October 5, 2018 order that denied the defendants' motion for a <u>Franks</u> hearing. Dkt. No. 62.

The court **REMANDS** the case to Judge Joseph so that she can conduct a full evidentiary <u>Franks</u> hearing.

The court **DEFERS** ruling on Judge Joseph's recommendation that this court deny the defendants' motion to suppress evidence. Dkt. No. 62.

The court **GRANTS** defendant Hinkle's motion for an order appointing counsel. Dkt. No. 79. The court **ORDERS** that Federal Defender Services of Wisconsin shall appoint Attorney John Schiro to represent defendant Hinkle, *nunc pro tunc* to July 10, 2018.

Dated in Milwaukee, Wisconsin this 15th day of May, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**